IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SAMMIE L. GATTISON,          )<br>                             )<br>          Plaintiff,          )<br>                             )<br>     v.                      )<br>                             )<br> COMMISSIONER OF SOCIAL SECURITY, )<br>                             )<br>          Defendant.          )<br>_____ ) | Civil Action No. 3:04-1993-SB-JRM<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On July 11, 2000, Plaintiff applied for DIB.[1] Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held July 23, 2002, at which Plaintiff appeared and testified, the ALJ issued a decision dated September 17, 2002, denying benefits and finding that Plaintiff was not disabled because he retained the residual functional capacity to perform a full range of light and sedentary work. The Appeals Council denied Plaintiff's request for review and Plaintiff filed a civil action in this Court. The Court, on motion of the Commissioner, remanded the case to the

---

[1] On December 13, 2002 and January 10, 2003, Plaintiff filed subsequent applications for SSI and DIB, respectively. Those applications were denied initially and on reconsideration. The subsequent applications were associated with the prior DIB application. See Tr. 223.

Commissioner for further administrative proceedings. Tr. 239-240. On July 7, 2003, the Appeals Council vacated the prior decision and remanded the case to another ALJ for evaluation of Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-01p. After a supplemental hearing before the ALJ on September 15, 2003, the ALJ issued a decision dated April 21, 2004, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-seven years old at the time he alleges he became disabled and fifty-two years old at the time of the ALJ's decision. He has a twelfth-grade education and past relevant work as a supervisor in the textile industry. Plaintiff alleges disability since May 12, 1999, due to a "bad nerve" in the left leg, which prevented him from standing or walking for long periods of time, knee pain, hypertension, and high cholesterol.

The ALJ found (Tr. 232):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The evidence establishes that the claimant is diagnosed with meralgia paresthetica of the left leg, osteoarthritis bilaterally of the knees, mild coronary artery disease with hypertension and hypercholesterolemia, and obesity, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination [, ] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant's allegations regarding his limitations are less than fully credible.

5. The claimant retains the residual functional capacity to perform work with restrictions that require no lifting or carrying over 20 pounds occasionally

and 10 pounds frequently; no pushing or pulling over 20 pounds; no standing and/or walking over six hours in an eight-hour workday; a sit/stand option every 45-60 minutes; no crawling, balancing or climbing of ladders or scaffolds; and no foot pedals or other controls with either lower extremity.

6. The claimant is unable to perform [his] past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

8. The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

9. The claimant's acquired skills from past relevant work are "job specific" and not transferable to other work within his residual functional capacity (20 CFR §§ 404.1568 and 416.968).

10. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include the light, unskilled jobs of quality control inspector and sorter.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The ALJ's decision became the Commissioner's final decision for purposes of judicial review when Plaintiff did not file written exceptions to the ALJ's April 2004 decision, and the Appeals Council refused to assume jurisdiction. Plaintiff filed the present action in this Court on June 22, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the

Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that the ALJ erred: (1) in failing to properly consider his combination of impairments; (2) in failing to consider the side effects of his medications on his ability to work; (3) in failing to find that his extremity swelling was a severe impairment; (4) in failing to properly apply Social Security Ruling SSR 02-01p in evaluating the severity of his obesity; (5) by failing to pose a proper hypothetical to the VE; (6) in failing to find that he met or equaled the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404. Subpt. P., App. 1 at § 1.02(A); (7) in failing to properly consider his combination of impairments; and (8) in failing to properly evaluate his credibility.

A.   Substantial Evidence

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. He contends that the ALJ erred in determining his residual functional capacity ("RFC"). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the RFC to perform a range of light, unskilled work (with a sit/stand option every 45 to 60 minutes, no crawling, no balancing, no climbing of ladders or scaffolds, and no use of foot pedals or other controls with either lower extremity - Tr. 232) is supported by substantial evidence including the findings of Plaintiff's treating and examining physicians. Plaintiff was hospitalized at the Byerly Hospital from May 26 to 27, 1997 for pulmonary edema and congestive heart failure. Tr. 198. On January 20, 1999, Plaintiff was treated in the emergency room of the McLeod Regional Medical Center in Florence, South Carolina for complaints of chest tightness, shortness of breath, a cough, dizziness, and left shoulder pain. Chest x-rays showed signs consistent with mild congestive heart failure, but an EKG was negative for acute ischemic changes. Dr. Susan F. Van Epps diagnosed Plaintiff with mild congestive heart failure and treated him with Lasix and nitroglycerin paste, which reportedly were effective in alleviating Plaintiff's symptoms. Tr. 132-141.

Plaintiff was treated by Dr. Dean Harter, an orthopaedist, on April 26 and May 10, 1999. Tr. 116-117. Dr. Harter diagnosed Plaintiff with meralgia paresthetica[2] of his left leg and recommended that Plaintiff take Daypro, restrict tight objects around his waist, and lose weight.

---

[2] Meralgia paresthetica is "a type of entrapment neuropathy caused by entrapment of the lateral femoral cutaneous nerve at the inguinal ligament causing paresthesia, pain and numbness in the outer surface of the thigh in the region supplied by the nerve." Dorland's Illustrated Medical Dictionary 1129 (30th ed. 2003).

5

Plaintiff's impairments were primarily treated by Dr. Pickens K. Moyd, a family physician. Tr. 145-168, 201-219, and 452-481. From August to December 1999, Plaintiff complained to Dr. Moyd of shortness of breath after walking short distances, numbness in his left leg, dizziness with standing, and no energy. Tr. 156-158. He reported that he had an angioplasty in October 1999, which showed two minor cardiac blockages. Tr. 157. In January 2000, Plaintiff complained of his left leg "giving way" and an inability to stand for over two hours. Tr. 156. An MRI of Plaintiff's lumbar spine revealed mild disc degeneration at L4-5 and L5-S1, and a very small disc protrusion at L5-S1 on the left. Tr. 199.

On May 6, 2000, Plaintiff was treated in McLeod Medical Center emergency room for left leg pain that was aggravated by prolonged standing at work. He also complained of similar pain in his right leg. Physical examination revealed that Plaintiff had full range of motion of his hips, knees, ankles, and toes; his sensory and motor examinations were intact; and CT scans of his abdomen and pelvis were negative. Plaintiff's pain reportedly improved markedly with medication. Tr. 119-131. On May 8, 2000, Dr. Moyd indicated that Plaintiff had a left limp, but was otherwise not in any acute distress. Tr. 152.

On June 8, 2000, Dr. Michael Mendes, an orthopaedist, examined Plaintiff. Dr. Mendes noted that Plaintiff walked without a limp or list, he had normal range of motion of both hips with no focal tenderness, there was some diffuse tenderness to moderate touch over his greater trochanter and lateral left knee, ranges of motion of both of his knees and ankles were normal, he had normal motor strength in his ankles, and he had a tingling sensation to light touch in his lateral thigh. Radiological testing revealed that Plaintiff's hip joints and pelvic contour were normal, he had no sacroiliac joint or hip joint abnormality, he had some mild degenerative changes of the

6

lumbar spine, and there was no evidence of degenerative changes or pathological lesions of his pelvis or lateral left hip. Dr. Mendes diagnosed atypical meralgia paresthetica, left greater than right; lumbar degenerative disc disease; and morbid obesity. He recommended continued non-surgical measures and referral to a pain clinic. Tr. 143-144.

On June 13, 2000, Dr. Moyd gave Plaintiff a work excuse for the period of May 11 to June 13, 2000. On June 16, 2000, Plaintiff told Dr. Moyd that he was unable to "hold out" at his job as a machine operator due to his legs hurting "real bad." Dr. Moyd advised Plaintiff to attend vocational rehabilitation and apply for disability. Tr. 151.[3] A treating physician's statement that a claimant is a candidate for vocational rehabilitation supports an inference that the claimant's impairment is not disabling. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991). On September 13, 2000, Plaintiff complained to Dr. Moyd of soreness in his knees and ankles. Tr. 150. Dr. Moyd noted that Plaintiff weighed 296 pounds,[4] had no crepitance in his left knee, and had a slow gait with a limp on the left. Tr. 150. On November 8, 2000, Plaintiff complained of arthritis in his left knee with no improvement in his symptoms. Examination revealed that Plaintiff's left knee had full extension without any problems; there was no crepitance, increased heat, or edema; Plaintiff's gait was normal; and he no longer had a limp. Tr. 148. On January 31, 2001, Plaintiff complained of worsening left knee pain. Dr. Moyd noted that Plaintiff weighed 300 pounds and his left knee had increased heat when compared to the right. X-rays of Plaintiff's

---

[3]Plaintiff testified at the July 2002 hearing that the only restriction any doctor placed on him was that Dr. Moyd instructed him to not lift more than twenty pounds. Tr. 44.

[4]Plaintiff is five feet, seven inches tall. Tr. 36.

7

knees were negative for osteoarthritis. Tr. 189, 193. On February 17, 2001, Dr. Moyd noted that Plaintiff's hypertension and congestive heart failure were stable. Tr. 147.

Plaintiff returned to Dr. Moyd on September 19, 2001, at which time he reported left knee weakness. Examination revealed no left knee tenderness or crepitance, and only a slight limp on the left. Tr. 185. Plaintiff was referred for a knee brace fitting. In December 2001, Plaintiff continued to complain of left leg pain. Dr. Moyd noted that there was no cure and advised Plaintiff to lose weight. Examination revealed that Plaintiff's gait was slow and he walked with a slight limp. Tr. 184. An arthritis profile in April 2002 was negative for anti-nuclear antibodies, but showed an elevated uric acid level and C-reactive protein. Tr. 194. Dr. Moyd noted that Plaintiff's hypertension was under poor control on May 20, 2002. Tr. 181. On June 5, 2002, Plaintiff reported that his left knee brace was doing quite well and he requested a brace for his right knee. He also reported that Robaxin greatly helped his knee pain. Although Plaintiff's hypertension was not under control, Dr. Moyd noted that Plaintiff had not taken his medication over the weekend because he had been on a trip to Columbia, South Carolina. Tr. 179-180. A November 1, 2002 chest x-ray showed that Plaintiff had a mildly enlarged heart with some streaky scaring. Tr. 256.

Plaintiff completed a sleep study in January 2003. The study showed profound obstructive sleep apnea, which was treated with continuous positive airway pressure ("CPAP") therapy. Tr. 257-284.

In February 2003, Plaintiff complained to Dr. Moyd about lower back pain. Examination revealed no objective tenderness of his back, a normal gait, and good control of hypertension. Tr. 313. On April 28, 2003, Plaintiff only complained of "generalized arthritic pain." Dr. Moyd

8

noted that Plaintiff's blood pressure was usually under better control, but was high because of his pain. Tr. 309.

From June 11 to June 26, 2003, Plaintiff underwent physical therapy for decreased left shoulder range of motion and pain. At the time of his discharge from treatment, Plaintiff reported that his arm no longer hurt and he was doing his home exercises everyday. Treatment notes indicated that Plaintiff had reached all of his goals. Tr. 286-304.

On July 21, 2003, Dr. Moyd noted that Plaintiff's hypertension was under good control and he received some pain relief with Tylenol # 3. Dr. Moyd prescribed a cane for Plaintiff's left knee because of weakness and pain. Tr. 306.

On August 5, 2003, Plaintiff was examined by Dr. W. Daniel Hardaway, a cardiologist. Plaintiff complained of occasional chest discomfort lasting a few seconds if he walked too much. Dr. Hardaway noted that Plaintiff's blood pressure was elevated. Cardiovascular examination showed Plaintiff's heart rate was regular with no murmur or gallops; normal jugular venous pressure, and no edema of his extremities. A cardiolite stress study showed evidence of inferior wall infarction and mild ischemic cardiomyopathy. An echocardiogram indicated that Plaintiff had mild concentric left ventricular hypertrophy and mildly depressed left ventricular systolic function. Doppler examination showed trace to mild mitral and tricuspid regurgitation, but with no pulmonic insufficiency. Tr. 317-321.

The ALJ's decision is also supported by the opinion of the State agency physician who reviewed Plaintiff's medical records and completed a residual functional capacity assessment. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians ]… regarding the nature and severity of an individual's impairments must be treated

9

as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On June 17, 2003, Dr. J. H. Weston opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday. Dr. Weston also opined that Plaintiff should never climb a rope or ladder; could occasionally balance, stoop, kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. Tr. 494-501.

B.     Combination of Impairments/Consideration of all Impairments

Plaintiff alleges that the ALJ erred in failing to properly consider his combination of impairments. He also argues that the ALJ did not follow the requirements of SSR 96-8p to considered all of his severe and non-severe impairments. The Commissioner argues that the ALJ properly consider all of Plaintiff's impairments, alone and in combination, and the resulting functional limitations.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ properly considered all of Plaintiff's combinations and their combined effects. He specifically found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments. Tr. 232.[5] The ALJ discussed Plaintiff's impairments including meralgia paresthetica, osteoarthritis of the knees, mild coronary artery disease with hypertension and hypercholesterolemia, obesity, sleep apnea, upper extremity pain, cervical spine, hip, and upper extremity impairments in the "Evaluation of the Evidence" section of his decision (Tr. 225-229). See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently considered impairments in combination where he separately discussed each impairment, the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work).

The ALJ also considered Plaintiff's limitations from his combination of impairments in his hypothetical to the VE. Specifically, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and past work experience who was limited to performing work that required no lifting or carrying over twenty pounds occasionally and ten pounds frequently, no pushing or pulling over twenty pounds, no standing and/or walking over six hours in an eight hour workday,

---

[5]Plaintiff argues that the ALJ erred in failing to find that his "swelling" was a "severe" impairment. It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Here, the ALJ found that Plaintiff's underlying disease, mild coronary artery disease with hypertension, was a severe impairment, but there is no indication that he should have found that a symptom resulting from this (swelling or edema) was itself a severe impairment. The medical evidence did not indicate that Plaintiff's swelling caused any functional limitations that would prevent him from performing a range of light work. Plaintiff testified that the swelling in his hands and leg responded to medication. Tr. 547. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

the option of not standing more that forty-five to sixty minutes at a time that would essentially be a sit/stand option, no crawling because of knee impairments, no balancing, no climbing of ladders or scaffolds, and no use of foot pedal of controls with either lower extremity. Tr. 555-556. In response, the VE identified a significant number of jobs that Plaintiff could perform. The ALJ then asked the VE to consider a claimant with the same restrictions as above without transferable skills. In response, the VE identified a significant number of jobs, including the jobs of inspector and sorter, that such a claimant could perform. Tr. 562. Contrary to Plaintiff's argument that the ALJ violated SSR 96-8p in not considering the effects of all of his severe and non-severe impairments on his ability to work, the ALJ specifically stated that he reviewed the total evidence in the record and considered the combined effect of Plaintiff's impairments, including all severe and non-severe impairments and subjective complaints, in determining Plaintiff's RFC. Tr. 229.

    C.    <u>Obesity</u>

Plaintiff alleges that the ALJ erred in failing to properly evaluate the impact of his obesity on his ability to work as required by SSR 02-01p. The Commissioner argues that the ALJ properly considered the effects of Plaintiff's obesity on his functional ability.

The ALJ properly evaluated Plaintiff's obesity and found that it was a severe impairment, but it did not prevent him from performing a range of light work. He specifically noted that he considered SSR 02-01p. The ALJ found that Plaintiff's obesity impacted his other impairments including his knee impairment and sleep apnea, but noted that Plaintiff's knee impairment was effectively treated with a brace, Plaintiff was observed to walk unassisted with only a slight limp at a slower pace, and Plaintiff's sleep apnea was successfully treated with the use of a CPAP machine. He also noted that Plaintiff's cardiac condition, despite his obesity, had not significantly

12

worsened since 1999. Tr. 229. The ALJ also considered Plaintiff's impairments in determining that he did not meet or equal one of the Listings.

### D. Credibility

Plaintiff alleges that the ALJ failed to properly consider his subjective complaints of pain and the side effects of his medication. The Commissioner argues that the ALJ properly considered the medical and non-medical evidence in finding that Plaintiff's complaints were not entirely credible.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination. As discussed above, the ALJ's decision is supported by the medical

13

record. Contrary to Plaintiff's argument, the ALJ noted Plaintiff testified in July 2002 that he experienced occasional drowsiness from pain medication (Tr. 42) and in September 2003 testified he became drowsy every time he took his muscle relaxant and pain medication (Tr. 445-450). The ALJ, however, found that Plaintiff's testimony was not fully credible. Contrary to Plaintiff's testimony, there are no indications in the medical record that Plaintiff complained of side effects from these medications. Treatment notes from Dr. Moyd indicate that Plaintiff was doing okay with his medications which helped his pain. Tr. 180, 305. Additional inconsistencies in the record also undermined Plaintiff's credibility. At the July 2002 hearing, Plaintiff testified that he could stand for about 35 minutes, but not over an hour without his leg becoming weak. Tr. 42. At the September 2003 hearing, Plaintiff testified that he could only stand for fifteen minutes at a time (Tr. 534), but the medical evidence does not reveal any significant worsening of his condition. Non-medical evidence also supports the ALJ's decision. Plaintiff reported to Dr. Moyd on June 5, 2002 that he dressed himself, shopped, drove a car, cooked sometimes, and sometimes cleaned the house ( Tr. 179 ), and on July 21, 2003 that he dressed himself, shopped some, drove some, and exercised some (Tr. 305).

### E.  Listings

Plaintiff alleges that the ALJ erred in not finding that he met or equaled the Listings at § 1.02(A) based on his obesity in combination with hypertension, congestive heart failure, cardiomeglia, meralgia paresthetica, swelling, and osteoarthritis. The Commissioner argues that Plaintiff fails to meet all the criteria of this Listing.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that

14

the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a). "Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Finally, a claimant has to establish that there was a "twelve-month period…during which all of the criteria in the Listing of Impairments [were] met." See DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Plaintiff fails to show that he meets or equals the Listing at § 1.02(A).[6] X-rays of both knees were negative for osteoarthritis. Tr. 189. Radiological reports also revealed normal hip

---

[6]The Listing at § 1.02(A) requires major dysfunction of a joint:
Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
    A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.02.

15

joints, no SI joint or hip joint abnormality, and no pathological lesions of Plaintiff's left hip. Tr. 143.

Although Plaintiff's medical records indicate that he had a slow gait at times with a slight limp and he was prescribed a cane in July 2003 (almost four years after his alleged onset of disability date), the use of one cane to ambulate does not meet the statutory definition of an inability to ambulate effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2)("The inability to ambulate effectively "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.").  Additionally, the State agency physicians signed Disability Determination Transmittal forms (Tr. 51-52, 322-323, 505-506), indicating they considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings.  See SSR 96-6p (signature of a State agency medical consultant on the "Disability Determination Transmittal" form ensures consideration was given to whether a Listing is met or equaled).

    F.    <u>Hypothetical to VE</u>

Plaintiff alleges that the ALJ erred because his hypothetical to the VE failed to consider the combined effects of all his impairments including obesity, swelling, and the effects of his medications.  The Commissioner argues that the ALJ posed a proper hypothetical question and was not required to include every impairment or symptom alleged, but only those functional limitations the ALJ found credible.

16

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

As discussed above, the ALJ posed a hypothetical question to the VE in which he included limitations on Plaintiff's ability to perform work including a limitation to light work, a sit/stand option every 45-60 minutes, no crawling, no balancing, no climbing of ladders or scaffolds, and no foot pedals or other controls with either lower extremity. In response, the VE identified light, unskilled jobs that such a claimant could perform. The ALJ was not required to include any additional restrictions because he found that they were not supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); Chrupcala, supra.

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

    RECOMMENDED that the Commissioner's decision be affirmed.

                                        Respectfully submitted,

                                        s/Joseph R. McCrorey
                                        United States Magistrate Judge

August 25, 2005
Columbia, South Carolina